IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD J. THOMPSON, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 22-44-CFC |
| | ) |
| CITY OF WILMINGTON | ) |
| (MUNICIPALITY), et al., | ) |
| | ) |
| Defendants. | ) |

Donald J. Thompson, III, Wilmington, Delaware, Pro se Plaintiff.

Caitlyn E. Quinn, Esquire and Jocelyn N. Pugh, Esquire, City of Wilmington Law Department.  Counsel for Defendants.

**<u>MEMORANDUM OPINION</u>**

May 9, 2023
Wilmington, Delaware

1

**CONNOLLY, Chief Judge:**

On January 12, 2022, Plaintiff Donald J. Thompson, III, who appears *pro se* and has paid the filing fee, commenced this employment-discrimination action pursuant to the Title VII of the Civil Rights of 1964, as amended, naming as Defendants the City of Wilmington ("the City") and several individual City employees. (D.I. 2) Before the Court is Defendants' motion to dismiss the Complaint. (D.I. 17) The matter is fully briefed.

## I. BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of deciding the pending motion. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Plaintiff, a "black African-American," has been employed by the City since December 2015. (D.I. 2 at 9) He initially worked as a General Laborer III and, since February 2018, has been a Construction Inspector in the Department of Public Works in the Division of Engineering. (*Id.*) In a May 2018 evaluation, Plaintiff's performance was deemed "satisfactory." (*Id.*) In February 2019, he applied for a promotion to the position of Chief Construction Inspector. (*Id.*) Five qualified black employees, including Plaintiff, applied for the position before the March 12, 2019 deadline. There were no white or Caucasian applicants. (*Id.* at 9-10) The position was reposted on March 18, 2019 without conducting interviews. Plaintiff applied to the reposting. (*Id.* at 9)

External candidate Susana Casado, "a white Hispanic," also applied to the reposting. (*Id.* at 9-10)  At the time of his applications, Plaintiff had never received any written discipline for his performance, attendance, or conduct. (*Id.* at 9)  The minimum requirements for the position were lowered as compared to when the prior Chief Construction Inspector was selected. (*Id.* at 10)

On April 1, 2019, the City's Director of Engineering said in front of witnesses that she was told by her superiors in the department to "put a leash" on Plaintiff. (*Id.* at 9)  That same day, Plaintiff filed an internal complaint of racial harassment with human resources, reporting this comment, and other harassment by the Director of Engineering and the Construction Supervisor/RCMS Manager. (*Id.*)  This conflict with the Director of Engineering arose from an ancillary matter from outside work involving a parking dispute near Plaintiff's driveway with his neighbors during which Plaintiff took home a City vehicle, requested "No Parking" signs, and called the police to enforce the signs. (*Id.*)  On April 17, 2019, the Director of Engineering issued three one-day suspensions against Plaintiff as punishment for his actions regarding the parking dispute. (*Id.*)  Following an appeal, the punishment was reduced to two one-day suspensions. (*Id.*)

In a June 6, 2019 letter, Plaintiff was advised that he was not selected for the promotion; instead, Casado was selected. (*Id.*)  Casado "did not possess the required 1) DNREC Certified Construction Reviewer certification, 2) OSHA

3

Combined Space Entry Certification, 3) 'considerable experience in surveying, drafting, and construction inspection engineering work[,]' or 4) '[c]onsiderable knowledge of materials, practices, and equipment used in major construction projects within the Public Works Department.'" (*Id.* at 10) (alterations in the original)  Furthermore, Casado "had no prior experience in municipal water or sewer or highway or roadway construction." (*Id.*)  By contrast, Plaintiff met or exceeded all the position requirements and was the only applicant with the requisite DNREC Certified Construction Reviewer certification and a "Class A" commercial driver's license. (*Id.*)  Additionally, one interview panel member told Plaintiff that he gave the best interview. (*Id.*)

Despite City policy, custom, and practice encouraging promotion from within, Plaintiff and the four other black employee applicants were bypassed to hire a less qualified external white candidate. (*Id.*)  The previous two individuals to hold the position were white employee applicants that were promoted. (*Id.*)

In October 2019, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the Delaware Department of Labor (DDOL) for failure to hire based on race and color discrimination, harassment, and retaliation for filing his April 2019 complaint with human resources. (*Id.* at 11)  On August 25, 2021, the DDOL issued a "Reasonable Cause Determination and Notice of Mandatory Conciliation," concluding that there "is reasonable cause to

4

believe that an unlawful employment practice has occurred." (D.I. 2-1 at 2) The reasonable cause finding was based on the following:

> Charging Party applied for a promotion in which he was qualified. Charging Party, along with four other qualified Black internal candidates were denied in favor of an external candidate outside of their protected class. Respondent alleges that neither of the internal candidates were in the best interest of the City, possessed the "soft skills" nor leadership skills required to handle the position. Respondent fails to demonstrate this. Respondent has also failed to answer how many internal applicants are required before they can repost the position. Based on the preponderance of evidence, Respondent subjected Charging Party to disparate treatment on the basis of his Race. As such, this office has issued the final determination of a **CAUSE FINDING**.

(*Id.*) (caps and emphasis in original) Mandatory conciliation was scheduled for September 8, 2021. (*Id.*) Conciliation failed and the DDOL reasonable cause determination became a right to sue letter. (*Id.*; D.I. 2 at 11) On October 19, 2021, the EEOC adopted the DDOL's findings and issued its own right to sue letter. (D.I. 2-1 at 1)

Plaintiff claims that he was not promoted because of race and color discrimination, as evidenced in part by the "Leash Comment," and in retaliation for his race discrimination complaint to human resources about "the Leash comment." (*Id.* at 4, 9) He also bring a claim for harassment based on race, color, and retaliation. (*Id.* at 4)

Additionally, Plaintiff alleges continuing harassment and retaliation in response to his EEOC complaint, occurring in February and September 2020. (D.I.

5

2 at 11) The February 2020 allegations concern Defendant's "resident doctor" asking Plaintiff "many questions that seemed to pertain to his ongoing lawsuit" during a medical examination, and Plaintiff being told that if he consulted with counsel he would have to "clock out" to do so. (*Id.*) In the ensuing dispute, Plaintiff was written up. (*Id.*) The September 2020 allegations concern two defendants illegally accessing his medical file to compromise his legal position and to search for a "some type of fireable offense." (*Id.*)

For relief, Plaintiff seeks injunctive relief placing him in the position of Chief Construction Inspector, back pay, front pay, and damages, all totaling $900,000. (*Id.* at 6)

## II. LEGAL STANDARDS

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim

of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In evaluating a motion to dismiss," the Court "may consider documents that are attached to or submitted with the complaint . . . matters incorporated by

7

reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted).

## III. DISCUSSION

In their motion and reply, Defendants essentially present five arguments for dismissal. (D.I. 18, 23) First, they argue that Plaintiff fails to state a claim against the individual Defendants because Title VII bars liability against individual employees. Second, they argue that Plaintiff's retaliation and harassment claims arising in 2020 must be dismissed for failure to exhaust administrative remedies. Third, they argue that Plaintiff's allegations fail to state a claim for discriminatory failure to promote based on his race and color. Fourth, they argue that Plaintiff fails to state a claim for retaliation because his complaint to human resources did not report racial harassment and therefore was not a protected activity and there was not causal connection between the filing of the complaint and the City's allegedly retaliatory actions. Finally, they argue that Plaintiff's allegations failed to state a claim for harassment.

### A. Individual Defendants

Defendants correctly argue that Title VII imposes liability only on employers, *see Williams v. Pennsylvania Hum. Rels. Comm'n*, 870 F.3d 294, 299

(3d Cir. 2017), and does not provide for individual liability. *See Parikh v. UPS*, 491 F. App'x 303, 308 (3d Cir. 2012); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII.").

### B. Administrative Exhaustion

The Court next addresses Defendants' argument that Plaintiff failed to exhaust his claims arising from events occurring in 2020, *i.e.*, *after* he filed his administrative complaint. Title VII claimants must exhaust their administrative remedies by filing a charge with the EEOC prior to filing a lawsuit. *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014). Acts alleged in the lawsuit are properly exhausted when they "are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (citation omitted). Regarding the second prong, "the Court must only look at the scope of the EEOC investigation that would reasonably grow out of, or arise from, the initial charge filed with the EEOC, irrespective of the actual content of the Commission's investigation." *Id.* at 208-09 (cleaned up). "In comparing the two sets of allegations, [courts] look for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue." *Id.* at 210-11.

Here, Plaintiff's administrative complaint could not have included his 2020 allegations, by virtue of its 2019 filing date. The absence of those allegations, however, is not dispositive. *See Robinson v. Dalton*, 107 F.3d 1018, 1025-26 (3d Cir. 1997) ("[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission.") (quotation omitted). Defendants argue that Plaintiff's 2020 allegations involve some different actors (including an unnamed doctor), and arise from different conduct (namely, Plaintiff's apparent filing of a worker's compensation lawsuit). As for the February 2020 allegations, they appear wholly unrelated to Plaintiff's administrative complaint, and any claims arising therefrom will be dismissed. Plaintiff's September 2020 allegations, however, are of a more mixed nature, appearing to reference both the apparent separate worker's compensation litigation and the factual context that gave rise to Plaintiff's EEOC complaint. Therefore, the September 2020 allegations could be found to have "grown out" of Plaintiff's administrative charge of discrimination, and the claims along those lines will not be dismissed.

### C. Failure to Promote

To prove a Title VII claim of race discrimination based on failure to promote, a plaintiff must establish that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was not promoted; and (4) the decision not to promote him "occurred under circumstances giving rise to an inference of unlawful discrimination, such as when similarly situated non-members of the protected class are treated more favorably than the plaintiff. *See Neal v. Genesis Props. of Del.*, 870 F. Supp. 2d 369, 379 (D. Del. 2012) (citing *Jones v. School Dist.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). "[F]or purposes of pleading sufficiency," however, "a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (footnote omitted). This is so because "[a] *prima facie* case is 'an evidentiary standard, not a pleading requirement,' and hence is 'not a proper measure of whether a complaint fails to state a claim.'" *Id.* at 789 (quoting *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 510 (2002), and *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). The post-*Twombly* pleading standard, rather than requiring the establishment of a *prima facie* case, "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Id.* (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (alteration original).

11

The Court reiterates that the matter before it is a motion to dismiss, not a motion for summary judgment. While it is common practice for courts considering motions to dismiss employment-discrimination claims to take judicial notice of the administrative complaint, *see, e.g.*, *Buck*, 452 F.3d at 260 (in reviewing a dismissal under Rule 12(b)(6), "the formal charge" filed with the EEOC was considered), the City asks the Court to take judicial notice of approximately eighty pages of primarily non-public documents that fall well beyond the judicial notice doctrine. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (noting that "a court may consider certain *narrowly defined types of material*" beyond the pleadings") (emphasis added). The City seems to interpret the ability of courts to take judicial notice of "a document integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation omitted), as permitting judicial notice of *any* materials beyond the four corners of the Complaint that may strengthen a movant's defense against Plaintiff's claims. (*See* D.I. 18 at 14) (relying on *Burlington Coat*).[1]

---

[1] *Cf. Fosburg v. Lehigh Univ.*, 1999 WL 124458, at *2 & n.5 (E.D. Pa. Mar. 4, 1999) (considering administrative filings in Title VII employment-discrimination case as part of the public record; declining to take judicial notice of Defendant's appendix of twenty-eight exhibits, which were neither undisputedly authentic nor referenced in the complaint; and noting that Defendant "misunderstands the limited scope" of the judicial notice doctrine "expounded upon in *Burlington Coat*").

Although the Court has the option of converting the motion to dismiss into a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), the Court declines to do so because discovery has not been conducted and Plaintiff has not been placed on notice that he would have to defend against summary judgment. *Cf. Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 672-73 (D.N.J. 2015) (converting a motion to dismiss into a motion for summary judgment under Rule 12(d) where the movant "frame[d] the motion to dismiss in the alternative as one for summary judgment," such that "the motion itself put[] the non-moving party on sufficient notice that the Court might treat the motion as one for summary judgment").

The City concedes, as it must, that Plaintiff's allegations are sufficient to establish that he is a member of a protected class, he applied for and was qualified for the promotion, and that he was not promoted. The City challenges, however, the sufficiency of his allegations to demonstrate circumstances giving rise to an inference that the City unlawfully discriminated against him. Parsing the motion to exclude the vast citations to the record and evidentiary arguments, and accepting Plaintiff's allegations as true, the Court concludes that Plaintiff's allegations are sufficient to support such an inference, and that he therefore has stated a claim for failure to promote.

### D. Retaliation

To state a retaliation claim under Title VII, a plaintiff must allege that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)). Here, Plaintiff alleges that he engaged in a protected activity by filing an internal complaint of racial harassment with human resources, which included reporting that the City's Director of Engineering stated that she was told by her superiors in the department to "put a leash" on him. He alleges that he suffered an adverse employment action when the City failed to promote him. Finally, he adequately alleges causation by way of temporal proximity as demonstrated by his intervening suspensions in between the filing of his complaint with human resources and the City's failure to promote him two months later. *Cf. Rieco v. Moran*, 633 F. App'x 76, 78-79 (3d Cir. 2015) (per curiam) (noting that "[a] period of five months between [a] constitutionally protected activity and an adverse action could establish the temporal proximity required to suggest causation for purposes of a First Amendment retaliation claim, but only if the plaintiff pleads other facts to demonstrate that he was subject to unfavorable treatment during that time period.") (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 303-05 (3d Cir. 2007)

(holding that, for purposes of a Title VII retaliation claim, a period of five months between the protected activity and adverse action was sufficient to establish causation because the plaintiff alleged intervening harassment by her employer))). These allegations are sufficient to state a claim for retaliation.

### E. Harassment

The Court construes Plaintiff's harassment claim as a hostile-work-environment claim. To state an employment-discrimination claim based on a hostile work environment, an employee must allege that (1) he suffered intentional discrimination because of the protected factor (in this case, race), (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person of the same race in that position, and (5) the existence of *respondeat superior* liability. *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007). Plaintiff's allegations fall well short of the kinds of "pervasive and regular" discrimination that would legally constitute a hostile work environment and this claim will therefore be dismissed.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part Defendant's motion to dismiss.

The Court will issue an Order consistent with this Memorandum Opinion.